**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(SOUTHERN DIVISION)**

| | | |
|---|---|---|
| STEPHAN M. AYRES, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Case No. GLS-21-0934 |
| | ) | |
| PHH MORTGAGE CORPORATION, *Successor* | ) | |
| *to Ocwen Loan Servicing, LLC, et al.,* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION

Pending before this Court is a "Motion to Dismiss the Amended Complaint with Prejudice" ("Motion to Dismiss") filed by Defendants PHH Mortgage Corporation, ("Defendant PHH"), Ocwen Loan Servicing, LLC ("Defendant Ocwen"), and Bank of New York Mellon, as Trustee for the Registered Holders of Salomon Brothers Mortgage Securities VII, Inc., Mortgage Pass-Through Certificates, Series 2001-2[1] ("Defendant Trustee," and collectively, "Defendants"). (*See* ECF No. 39). Plaintiffs Stephan M. Ayres and Angela R. Ayres, *pro se*, filed a "Reply to Defendants' Motion to Dismiss," ("Opposition") (ECF No. 41), and Defendants filed their "Reply in Further Support of Defendants' Motion to Dismiss the Amended Complaint with Prejudice," ("Reply") (ECF No. 42). The issues have been fully briefed, and no hearing is necessary. Local Rule 105.6 (D. Md. 2021).

---

[1] The docket sheet erroneously lists Defendant Trustee as two separate defendants: (i) "Bank of New York Mellon, as Trustee for the Registered Holders of Salomon Brothers Mortgage Securities VII, Inc." and (ii) "Mortgage Pass-Through Certificates, Series 2001-2."

For the reasons set forth below, Defendants' motion to dismiss is **GRANTED IN PART AND DENIED IN PART.**

I.      **BACKGROUND[2]**

A.  **Factual and Procedural Background – Prior Lawsuits**

On March 18, 1991, Plaintiff Stephan Ayres financed the purchase of a property located at 6600 Street, District Heights, Maryland, 20747 ("the Halleck property") by borrowing $72, 660.00 from Market Street Mortgage Corporation. (ECF No. 34, "Amended Complaint" ¶¶ 13, 23; ECF No. 1-1, pp. 14-17, "Deed of Trust"). The owner of the loan is Defendant Trustee. (Amended Complaint, ¶ 27). Defendant Ocwen became the mortgage servicer for the Ayres Note on November 1, 2011. (*Id.*, ¶ 26). Defendant PHH started servicing the Ayres loan on June 21, 2019. (*Id.*, ¶ 25).

On June 3, 2013, Plaintiffs filed a complaint against Defendant Ocwen and several other defendants in federal court,[3] alleging fifteen claims related to mortgage fraud. *See Ayres v. Ocwen Loan Servicing, LLC*, Civ. No. CCB-13-1597, ECF No. 1 (D. Md.) ("*Ayres I*"). On August 27, 2014, the court granted the defendants' motion to dismiss without prejudice and gave Plaintiffs an opportunity to amend their complaint in light of their *pro se* status. *See Ayres I*, ECF Nos. 55, 56. On October 24, 2014, Plaintiffs filed an amended complaint against Defendant Ocwen and Salomon Brothers Mortgage Securities VII, Inc., alleging: (1) violations of the Maryland

---

[2] Unless otherwise stated, these facts are drawn from the Amended Complaint (ECF No. 34), any documents subject to judicial notice, and any exhibits to the parties' pleadings that the Court has determined are integral to Plaintiffs' Amended Complaint. *See infra* Part III. A court may take judicial notice of public records. *See Phillips v. Pitt County Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). The Court also incorporates by reference the thorough background related to Plaintiffs' allegations in *Ayres v. PHH Mortgage Corp.*, Civ. No. GJH-20-275, ECF No. 19 (D. Md. June 29, 2020) ("*Ayres II*").
[3] Plaintiffs filed their first complaint against: (1) Defendant Ocwen; (2) Litton Loan Servicing, LP; (3) Salomon Brothers Mortgage Securities VII, Inc.; (4) Salomon Smith Barney, Inc.; (5) Salomon Smith Barney Holding; (6) Citigroup Global Markets, Inc., formerly Salomon Brothers Realty Corp.; (7) J.P. Morgan Chase Bank; and (8) Citibank, NA. *Ayres I*, ECF No. 1, pp. 1-2.

Consumer Protection Act ("MCPA"); (2) violations of the Maryland Consumer Debt Collection Act ("MCDCA"); (3) violations of the Maryland Mortgage Fraud Presentation Act ("MMFPA"); (4) negligence; (5) violations of the  Real Estate Settlement Procedures Act ("RESPA"); (6) tortious interference with economic relationship; (7) defamation; (8) violations of the Fair Debt and Collection Practices Act ("FDCPA"). *See Ayres I*, ECF No. 61, pp. 28-46. Plaintiffs also sought declaratory and injunctive relief. *Id.*, pp. 41-42. On September 8, 2015, the court dismissed the MMFPA claim and the negligence claim with prejudice for failure to state a claim. *See Ayres I*, ECF No. 89 at 46–51. Plaintiffs filed a Second Amended Complaint in *Ayres I* on October 19, 2015 against Defendant Ocwen and Defendant Trustee, correcting a prior error related to the identification of Defenadnt Trustee pursuant to the court's memorandum opinion.  *Ayres I*, ECF No. 100.

On November 9, 2016, the district court granted summary judgment in favor of defendants as to Plaintiff's claims under RESPA, FDCPA, MCPA, and Plaintiffs' claim for defamation. The court also denied Plaintiffs' motion for partial summary judgment. *Ayres I*, ECF Nos. 158, 159. Plaintiffs appealed the order, and the Fourth Circuit held that because the lower court had not explicitly ruled on Plaintiffs' claim under the MCDCA or their request for declaratory and injunctive relief, there was no final order creating appellate jurisdiction. *Ayres*, ECF No. 163, pp. 5-6. On remand, the district judge entered an additional memorandum and order entering judgment on all claims in favor of defendants. *Ayres I*, ECF Nos. 171, 172. On appeal, the Fourth Circuit affirmed this decision. *Ayres I*, ECF No. 179.

On January 7, 2020, Plaintiffs filed a complaint in Prince George's Circuit Court against Defendant Ocwen and Defendant Trustee, alleging: (1) violations of MCPA and MCDCA; (2) violations of MMFPA; (3) negligence violating Maryland law; as well as seeking Declaratory and

Injunctive relief. After removing the matter to this court, the defendants filed a motion to dismiss, asserting *res judicata* and failure to state a claim. *Ayres v. PHH Mortgage Corp.*, Civ. No. GJH-20-275, ECF Nos. 2, 10-1, pp. 6-14 (D. Md.) ("*Ayres II*"). On June 29, 2020, the district court issued a memorandum opinion and an order granting the defendants' motion to dismiss. *Ayres II*, ECF Nos. 19, 20. The court first held that any claims "based on attempts to collect payments under the terms of the original Loan" were barred by *res judicata* due to the holding in *Ayres I*. *Ayres II*, ECF No. 19, p. 14. The court also held that any claims based on the Loan Modification Agreement, which was signed after the final judgment was affirmed in *Ayres I*, would not be barred by *res judicata* and would be evaluated for whether Plaintiffs failed to state a claim as required by Fed. R. Civ. P. 12(b)(6). (*Id.*). Regarding Plaintiffs' claims arising under the MCPA, MCDCA, and MMFPA, the court found that Plaintiffs had failed to state a claim. (*Id.*, pp. 15-19). Regarding the claim for negligence, the judge found that collateral estoppel barred the relitigation of whether Plaintiffs were owed a duty by defendants because *Ayres I* had determined that Plaintiffs were not owed a duty by "defendants and their privies." (*Id.*, pp. 19-20). Finally, the court found that Plaintiffs' claim for injunctive relief could not stand alone because each of Plaintiffs' substantive claims for relief had been dismissed. (*Id.*, p. 20). The court dismissed Plaintiffs' complaint with prejudice. *Ayres II*, ECF No. 20. On appeal, the Fourth Circuit affirmed the court's decision on May 27, 2021, modifying the order to dismiss the complaint without prejudice because the court did not give Plaintiffs the opportunity to amend or state why amendment would be futile. *Ayres II*, ECF No. 25-2, p. 2.

### B.  Procedural Background

On June 14, 2021, Plaintiffs filed this action against Defendants PHH, Ocwen, Trustees, and Mr. Hubert Paul.[4] (ECF No. 1). Plaintiffs alleged: (1) violations of MCPA and MCDCA; (2) violations of MMFPA; (3) Negligent Misrepresentation; (4) violations of HOEPA, Regulation Z and request for Injunctive Relief and Recission; and (5) violations of the Clayton Act. (*Id.*).

Defendants filed a Motion to Dismiss, the Plaintiffs filed a response in opposition, and the Defendants filed a reply. (ECF Nos. 24, 26, 29). Plaintiffs then filed a Motion for Leave to Amend the Complaint. (ECF No. 30). The court granted Plaintiffs' Motion to Amend and set a briefing schedule for Defendants' Motion to dismiss. (ECF No. 35). On February 8, 2022, Plaintiffs filed their Amended Complaint, adding additional claims and allegations. (ECF No. 34).  Specifically, Plaintiff's Amended Complaint advances the following federal and state law claims:

| COUNT | CLAIM ASSERTED |
|---|---|
| I | "Violation Maryland's Consumer Protection Act ("MCPA"), Md. Code Ann., Com. Law 13-101 *et seq.* & Maryland's Consumer Debt Collection Act ("MCDCA") Md. Code Ann., Com. Law 14-201" |
| II | "Violation of the Maryland Mortgage Fraud Protection Act, Md. Code Ann., Real Prop. 7-401, et seq." |
| III | "Negligent Misrepresentation" |
| IV | "Violation of Home Ownership and Equity Protection Act (HOEPA), Regulation Z and Request for Injunctive Relief and Recission" |
| V | "The Clayton Act" |
| VI | "Violation of the Real Estate Settlement Procedures Act 12 U.S.C.A 2605" |
| VII | "Violation of Fair Debt Collections Practices Act (FDCPA)" |
| VIII | Breach of Contract |
| IX | Unjust Enrichment |

---

[4] Plaintiff describes Mr. Hubert Paul as the "authori[z]ed officer" of Ocwen Loan Servicing, LLC. From a review of the docket, it appears that Plaintiffs attempted to serve Mr. Paul with the same form as for Defendant Ocwen, and never served Mr. Paul individually. (ECF No. 16, pp. 5-6). Accordingly, Mr. Paul is not properly before this Court as a defendant.

On February 10, 2022, this case was referred to the undersigned by all further proceedings, to which the parties consented. (ECF No. 37).  On April 1, 2022, Defendants filed their Motion to Dismiss, advancing challenges pursuant to Fed. R. Civ. P 12(b)(6). On April 19, 2022, Plaintiffs filed their Opposition. On May 12, 2022, Defendants filed their Reply.

### C.  Facts Alleged in Plaintiff's Amended Complaint[5]

Although sometimes hard to decipher from the Amended Complaint, Plaintiffs appear to allege violations of federal and state law arising out of two sets of actions taken by Defendants: (1) actions taken by Defendant Ocwen related to the Loan Modification Agreement ("LMA"); and (2) the actions taken by PHH related to the management of Plaintiffs' escrow account.

As set forth above, the judgment in *Ayres I* was affirmed by the Fourth Circuit on May 7, 2018. Sometime after this final judgment, Defendant Ocwen sent to Plaintiffs a "default letter" and a notice of intent to foreclose. (Amended Complaint, ¶ 29). Thereafter, Defendant Ocwen also sent a "Mortgage Account Statement" dated June 25, 2018, to Plaintiff Angela Ayres ("Mrs. Ayres") stating that $51,072.31 was due. (*Id.*, ¶ 43; ECF No. 1-1, p. 38 "Mortgage Account Statement"). Plaintiffs applied for a loan modification and entered into a three month trial period beginning in August 2018. (*Id.* ¶ 30). Defendant Ocwen approved the LMA by letter dated November 19, 2018, Plaintiffs signed the LMA on November 27, 2018, and Plaintiffs received a Lender Acknowledgment Letter from Defendant Ocwen. (*Id.*; ECF No. 39-2 "LMA").[6]

On June 21, 2019, Defendant PHH, a subsidiary of Defendant Ocwen, started servicing the Plaintiffs' loan. (Amended Complaint ¶ 25).

---

[5] This Court assumes Plaintiff's version of facts to be true and construes the facts in the light most favorable to the non-moving party, Plaintiff. *Baltimore Scrap Corp. v. Exec. Risk Specialty Ins. Co.*, 388 F. Supp. 3d 574, 584 (D. Md. 2019).

[6] Both Plaintiffs and Defendants append the LMA to respective pleadings. Because the version appended to the Motion to Dismiss is clearer in quality and easier to read, the Court refers to that version.

On January 4, 2020, Plaintiffs received an audit report of their mortgage loan from a third party auditor, Loantech. (Amended Complaint ¶ 31). This audit report stated that the amount owed pursuant to the LMA was inflated by $59,921.23, and the amount the LMA stated as the principal was also inflated. (*Id.*). [7]

In March 2020, Plaintiffs' monthly mortgage payment increased from $789.53 to $887.16. (Amended Complaint, ¶ 51). Plaintiffs contacted Defendant PHH to understand why the increase occurred. Plaintiffs received a response from Defendant PHH that the escrow account was projected to be underfunded by $439.56, so the monthly payment had been increased. (*Id.* ¶ 51, 111; ECF No. 34-2 pp. 10-11 "March/April 2020 Correspondence"). Plaintiffs informed Defendant PHH that this was in error. (Amended Complaint, ¶ 52).

In September 2020, Plaintiffs received an "Off-Scheduled Escrow Statement," estimating that the anticipated amount to be paid out of the escrow account would be $4,094.32. Plaintiffs also allege that the Escrow Account was also charged by that sum. (Amended Complaint, ¶ 50; ECF No. 34-2 pp. 4-6 "September 2020 Escrow Statement"). Plaintiffs allege that Defendant PHH charged the escrow account $4,143.44 in the year 2020 wrongfully obtained this money by charging monthly payments of $280.20, amounting to an overcharge by a sum of $2455.33. (Amended Complaint, ¶¶ 117, 118).

In July 2021, Plaintiffs received an annual escrow statement and an escrow refund check of $1664.98 related to their 2020 property taxes. (Amended Complaint, ¶ 32; ECF No. 43-2, pp. 7-9 "July 2021 Escrow Statement"). Plaintiffs paid $1688.14 in taxes for the year 2020. (Amended Complaint, ¶ 49). [8] According to the "Property Tax Inquiry" Forms, Plaintiffs paid $1688.14 in

---

[7] Plaintiffs also allege that the audit reveals that Plaintiffs were overcharged by $59,211.60. (Amended Complaint, ¶¶ 69, 70).

[8] Plaintiffs refer to a "property tax statement" for fiscal year 2020, but the parties did not attach statements of the amount that Plaintiffs paid for fiscal year 2020, and whether they paid this sum in escrow or directly to the Maryland

taxes for fiscal year 2021, and they paid $1165.86 in property taxes for fiscal year 2022. (ECF No. 34-2, pp. 3-4 "Property Tax 2021, Property Tax 2022").  However, Defendant PHH charged the escrow account $3,362.00 for the year 2021 and failed to refund the overcharge or correct the account. (Amended Complaint, ¶ 119).

In September 2021, Plaintiffs directly paid their property taxes for the tax year 2021, despite the LMA provision that provides that property taxes were to be held in escrow and paid by the lender. (Amended Complaint, ¶ 33, 112; LMA, pp. 5-6). Plaintiffs seem to have sent four emails related to the escrow account to Defendant PHH: (1) an email sent in September 2021, to which Defendant PHH sent a confirmation of receipt on September 6, 2021; (2) an email sent in October 2021, to which Defendant PHH sent a confirmation of receipt on October 1, 2021; (3) an email sent by Mrs. Ayres on November 12, 2021, responding to a mass email sent by Defendant PHH regarding property tax payments, to which Defendant PHH sent a confirmation of receipt on November 12, 2021; and (4) an email sent by Mr. Ayres on November 29, 2021. (Amended Complaint ¶ 112; ECF No. 34-2, pp. 12-18).

On November 30, 2021, Defendant PHH responded to Mr. Ayres' November 29, 2021 email, stating that insurance would be removed from escrow per his request, and his request to remove taxes from escrow was "currently under review." (ECF No. 41-2, p. 103).

On December 7, 2021, counsel for Defendants responded to Mrs. Ayres' November 12, 2021 email, stating that the Plaintiffs' account would remain escrowed as set forth in the LMA. (ECF No. 41-2, p. 110). Counsel also stated that based on the servicing records, it appeared that Plaintiffs pre-paid their real property taxes directly in 2020, then Defendant PHH also paid the taxes. (*Id.*). Counsel stated that Defendant PHH eventually received a credit back to balance

---

Department of Assessments and Taxation. Ultimately, Defendants do not contest that Plaintiffs "pre-paid" property taxes in 2020.

Plaintiffs' account but advised that this would "continue to happen" if Plaintiffs continued to pay their taxes directly. (*Id.*). Mrs. Ayres responded, asserting that there is "nothing for them to escrow," since Plaintiffs had already paid their taxes. (*Id.*).

On January 11, 2022, counsel for Defendants sent Mrs. Ayres a letter following up on her emails regarding the escrow account. (Amended Complaint, ¶ 133; ECF No. 34-2, pp. 20-21 "Defendants' January 2022 Letter). In that letter, counsel stated that: (1)  Plaintiffs' loan was no longer escrowed for homeowners insurance but would still be escrowed for real property taxes, as Defendant PHH did not waive the escrow requirement as outlined in the LMA; and (2) based on a review of public records, it appeared that Plaintiffs received a tax credit reducing the actual amount of real property taxes paid in "the last year or two," and if Plaintiffs were to provide documentation regarding the tax credits, then Defendant PHH would run a new escrow analysis to adjust the monthly payment going forward. (*Id.*). On January 13, 2022, Mrs. Ayres responded, attaching the documentation of Plaintiffs' taxes. (ECF No. 41-2, p. 105). Counsel for Defendants confirmed receipt on January 18, 2022, stating that she would submit the attachment for review and would let Mrs. Ayres know if more documentation was needed to run a new escrow analysis taking the tax credits into account. (*Id.*).

Finally, the Amended Complaint also generally reflects that Defendant Ocwen and Defendant PHH have been subject to other lawsuits surrounding their mortgage servicing practices. (Amended Complaint, ¶ 73, 83, 94).

In sum, the Amended Complaint alleges that Defendants: (a) engaged in misconduct related to the LMA; and (b) overcharged Plaintiffs' escrow account. As a result, Plaintiffs have suffered economic and non-economic damages, including overpaying on their mortgage and paying double the amount owed for property taxes for two years. (Amended Complaint, ¶¶ 58, 59).

9

## II.   STANDARDS OF REVIEW

### A.  Rule 12(b)(6) Motion to Dismiss

A defendant who files a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is asserting that, even if a court construes the facts advanced in the Plaintiff's complaint as true, that complaint fails to state a claim upon which relief can be granted.  To survive a motion to dismiss, a complaint must provide a defendant with "fair notice of what the claim is and the grounds upon which it rests." *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) (citing *Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013)). In other words, a complaint must contain sufficient facts and must state a "plausible claim for relief."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also* Fed. R. Civ. P. 8(a); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (complaint must set forth enough facts as to suggest a "cognizable cause of action").  A claim has "facial plausibility" when the plaintiff pleads factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.

When resolving a 12(b)(6) motion, a court accepts as true the well-pleaded allegations in a complaint. *Lokhova v. Halper*, 995 F.3d 134, 141 (4th Cir. 2021). Furthermore, a court "does not resolve contests surrounding the facts [or] the merits of a claim." *Ray*, 948 F.3d at 226 (citation omitted).

Where a plaintiff states a claim sounding in fraud, the plaintiff must also "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). A plaintiff alleging fraud must allege with particularity the "time, place, speaker, and contents of the false representations." *Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 781 (4th Cir. 2013) (citation omitted).

Finally, this Court must liberally construe a *pro se* plaintiff's claims to ensure that a potentially meritorious claim survives challenge. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980).  In that regard, this Court measures an "inartfully pleaded" *pro se* pleading by "less stringent standards" than pleadings drafted by attorneys. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). It is equally true, however, that a court cannot turn a blind eye to a plaintiff's failure to allege facts that establish a cause of action.  Nor can the Court act as an advocate for a *pro se* plaintiff and infer the existence of facts not clearly pleaded. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990).

## III.    Materials Considered

In general, a Rule 12(b)(6) motion tests the sufficiency of a complaint, and a court's evaluation is "limited to a review of the allegations of the complaint itself." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (quoting *Occupy Columbia v. Haley*, 738 F.3d 107, 116 (4th Cir. 2013)).  However, a court may consider other documents submitted by the parties "not attached to or expressly incorporated in a complaint, so long as [any such] document was integral to the complaint and there is no dispute about the document's authenticity." *Staggers v. Becerra*, Civ. No. ELH-21-231, 2021 WL 5989212, at *11 (D. Md. Dec 17, 2021) (quoting *Goines*, 822 F.3d at 166); *see Jeffrey M. Brown Assocs., Inc. v. Rockville Ctr. Inc.*, 7 F. App'x 197, 202 (4th Cir. 2001) (considering exhibits of the original complaint if integral to and relied on in the amended complaint).  To be "integral," a document must "by its 'very existence, and not the mere information it contains, give[] rise to the legal rights asserted.'" *Parker v. Children's Nat'l Med. Ctr.*, Inc., Civ. No. ELH-20-3523, 2021 WL 5840949, at *5 (D. Md. Dec. 9, 2021) (quoting *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point*, LLC, 794 F. Supp. 2d 602, 611 (D. Md. 2011)).

In addition, a court may properly take judicial notice of "matters of public record," continuing to construe all facts in the light most favorable to the plaintiff "along with the well-pleaded allegations of the complaint." *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508-09 (4th Cir. 2015).

In this case, the parties have appended numerous exhibits, several of which are explicitly relied upon by the Plaintiffs in drafting the Amended Complaint. The Court will analyze only the exhibits that it finds integral or subject to judicial notice as follows.

First, the Plaintiffs' MCPA, MCDCA, and MMFPA claims are based on allegedly fraudulent statements in: (1) the Mortgage Account Statement; (2) the LMA;[9] (3) Plaintiffs' escrow statements from September 2020 and July 2021; and (4) Plaintiffs' monthly mortgage statements. (ECF No. 1-1, p. 38; ECF No. 39-2; ECF No. 34-2, pp. 4-9; ECF No. 39-4). The Amended Complaint specifically references these documents and the statements contained therein to allege misrepresentation. Therefore, these documents are integral to the Amended Complaint, and the Court may consider them. *See Barr v. Flagstar Bank, FSB*, 303 F. Supp. 3d 400, 411 (D. Md. 2018) (considering documents forming the basis for MCPA and MMFPA claims).

Second, Plaintiffs allege in their RESPA claim that they sent multiple qualified written requests ("QWRs") without receiving the proper response required by law. Plaintiffs cite to several emails and Defendant PHH's responses to those emails, some of which are attached to the Amended Complaint and some of which are attached to the Opposition.  (Amended Complaint ¶¶ 112, 114; ECF No. 34-2, pp. 12-17; ECF No. 41-2, pp. 103-110). Because Plaintiff's emails and Defendant PHH's responses form the basis for the RESPA claim, these documents are integral to

---

[9] The LMA is also integral to Plaintiffs' Breach of Contract claim.

the Amended Complaint and the Court may consider them. *See Barr*, 303 F. Supp. 3d at 411 (considering plaintiffs' letters and defendants' responses as integral to resolve RESPA claim).

Finally, the Court considered the following public records, about which it takes judicial notice: (1) the Deed of Trust; and (2) Plaintiffs' publicly available tax information. (ECF No. 1-1, p. 14-17; ECF No. 34-2 pp. 2-3; ECF No. 42-1; ECF No. 42-2).

## IV.    DISCUSSION

In support of their Motion to Dismiss, Defendants advance several arguments. First, that Plaintiffs' claims arising from the LMA should be dismissed pursuant to Rule 12(b)6) because Plaintiffs failed to state claims for: (1) violations of MCPA and MCDCA; (2) violations of MMFPA; (3) Negligent Misrepresentation; (4) violations of HOEPA and Regulation Z; (5) violations of the Clayton Act; and (6) Unjust Enrichment. Second, regarding Plaintiff's claims arising from Defendant PHH's management of the escrow account, because Defendant PHH did not collect excessive escrow payments, Plaintiffs have not and cannot state claims for: (1) violations of MCPA and MCDCA; (2) violations of MMFPA; (3) Negligent Misrepresentation; (4) violations of FDCPA; and (5) Breach of Contract. Finally, Plaintiffs failed to state claims related to Defendant PHH's management of the escrow account for: (1) violations of RESPA; and (2) Unjust Enrichment. (Motion to Dismiss, pp. 16-24, 36-40)

Plaintiffs counter that they have adequately pleaded all claims. In the alternative, Plaintiffs ask the Court for leave to amend the Amended Complaint to remedy any defects. (Opposition, p. 32).[10]

---

[10] To the extent that Plaintiffs request that this Court grant summary judgment in their favor in their Opposition, the Court denies this request as premature. (Opposition, pp. 1, 32). *See E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011) (summary judgment usually inappropriate when parties have not had an opportunity for "reasonable discovery").

### A. Claims arising from LMA (Counts I, II, III, IV, V, IX)

#### 1. Count One: MCPA and MCDCA

##### (a) MCPA

Defendants argue that Plaintiffs have not alleged a violation of the MCPA because: (1) the loan balance for the LMA is accurate; (2) Plaintiffs have not alleged reliance on particular false statements; and (3) because Plaintiffs do not allege reliance, Plaintiffs do not allege injury as a result of reliance. Plaintiffs counter that they relied on the LMA in general because of other lawsuits to which Defendant Ocwen was subject.

To establish a violation of the MCPA, a plaintiff must plead that:

(1) the defendant engaged in an unfair or deceptive practice or misrepresentation;
(2) the plaintiff "relied upon the misrepresentation; and
(3) doing so caused the plaintiff actual injury.

*Barr*, 303 F. Supp. 3d at 416.

The MCPA is subject to the heightened pleading standard of Fed. R. Civ. P. 9(b) because it "sounds in fraud." *Johnson v. Nationstar Mortg., LLC*, Civ. No. GJH-14-2536, 2014 WL 5377636, at *3 (D. Md. Oct. 21, 2014). To plead reliance, a plaintiff must plead facts from which a court may plausibly infer that the false or misleading statement "substantially induced" his or her choice. *Currie v. Wells Fargo Bank, N.A.*, 950 F. Supp. 2d 788, 798 (D. Md. 2013).

Regarding Defendant Ocwen's actions concerning the LMA, Plaintiffs allege that Defendant Ocwen made false statements in a Mortgage Account Statement and in the LMA itself because: (1) Mrs. Ayres is not on the Deed of Trust or the Note; and (2) the Mortgage Account Statement dated June 25, 2018 contained an incorrectly stated that Mrs. Ayres owed $51,072.31; and (2) the LMA contained misrepresentations regarding the loan balance, principal, interest, and balloon payment. (Amended Complaint, ¶¶ 37, 39, 40, 41, 43, 44, 45, 56). Plaintiffs appear to

allege generally that they "reasonably relied" on the "misrepresentations as described in the LMA." (*Id.* ¶ 41). Plaintiffs also allege that they have paid "inflated payments," and allege economic and non-economic damages "caused by" the misrepresentations in the LMA. (*Id.* ¶¶ 57, 58).

However, the Plaintiffs have not cured the defects highlighted by the court in *Ayres II*. First to the extent that Plaintiffs are alleging that they relied on the LMA itself, Plaintiffs do not allege any specific communications related to the LMA that contain information about the "time, place, and contents of the false representations," as required by Fed. R. Civ. P. 9(b). *Spaulding*, 714 F.3d at 781. Second, to the extent that Plaintiffs are attempting to allege that Mortgage Account Statement from June 25, 2018, contained fraudulent statements, they fail to allege that, *e.g.*, they relied on assertions in this statement to sign the LMA or make payments or allege facts to support an inference that this Mortgage Account Statement "substantially induced" their decisions. (Amended Complaint, ¶ 43). *See Currie*, 950 F. Supp. 2d at 798. Nor do the Plaintiffs allege damages stemming specifically from any reliance on the Mortgage Account Statement. Plaintiffs argue in their Opposition that they believed that the LMA would be "fair and honest" based on consent decrees from other cases involving Defendant Ocwen, and further assert that they make payments pursuant to the LMA, establishing reliance. (Opposition, pp. 6-7). However, even if the Court considered these belated assertions, Plaintiffs have not plausibly pleaded that they reasonably relied on specific false or misleading statements made by Defendant Ocwen to make any particular decision to their detriment. *See Ayres II*, ECF No. 19, p. 16.[11] Accordingly, Defendants' Motion to Dismiss Plaintiffs' claim under the MCPA related to the LMA is granted.

---

[11] As Judge Hazel wrote in *Ayres II* regarding Plaintiffs' lack of reliance, "Plaintiffs had known since they filed *Ayres I* that Defendants and their privies allegedly had incorrect records of the amount owed on the Loan and, according to the Complaint, Plaintiffs continued to challenge, and never accepted, the amounts demanded by Defendants." *Id.* (citing, *inter alia*, *Green v. Wells Fargo Bank, N.A.*, 927 F. Supp. 2d 244, 253 (D. Md. 2013)).

(b) <u>MCDCA</u>

Defendants argue that Plaintiffs have not alleged any facts following the judgment in *Ayres I* that demonstrate that Defendants had knowledge that the amounts owed in the LMA were false. (Motion to Dismiss, pp. 18-19). Plaintiffs counter that the letter sent to Mrs. Ayres in June 2018 violates MDCDA because: (1) Mrs. Ayres is not a party to the Deed of Trust or Note; and (2) the 2020 Audit and other lawsuits show that Defendant Ocwen knew it was overcharging Plaintiffs. (Opposition, pp. 9-11).

The MCDCA provides that a debt collector may not "[c]laim, attempt, or threaten to enforce a right with knowledge that the right does not exist." Md. Code Ann., Com. Law § 14-202(8). To state a claim under the MCDCA, a plaintiff must establish that:

> (1) the defendant did not possess[] the right to collect the amount of debt sought; and
> (2)  the defendant attempted to collect the debt with the knowledge that [it] lacked the right to do so.

*Barr*, 303 F. Supp. 3d at 420 (citing *Lewis v. McCabe, Weisberg & Conway, LLC*, 2014 WL 3845833, at *6 (D. Md. Aug. 4, 2014)). In addition, a plaintiff must show the defendant had "actual knowledge" or "reckless disregard" that it is trying to enforce a right that does not exist. *Kouabo v. Chevy Chase Bank, F.S.B.,* 336 F. Supp. 2d 471, 475 (D. Md. 2004).

In this case, Plaintiffs have alleged only that Defendant Ocwen made false statements in the LMA regarding loan balance, principal, interest, and in the balloon payment. (Amended Complaint, ¶ 56). As in *Ayres II*, Plaintiffs have failed to allege any facts from which this Court could draw the reasonable inference that Defendant Ocwen was operating "in bad faith such that it knew the amounts it was attempting to collect were incorrect." *Ayres II*, ECF No. 19, p. 17. Because Plaintiffs have not alleged facts to support actual knowledge or reckless disregard of any

alleged issues with the amounts in the LMA or surrounding documentation, Defendants' Motion

to Dismiss Plaintiffs' claim under the MDCDA arising from the LMA is granted.

### 2. Count Two: MMFPA

Defendants argue that Plaintiffs have failed to plead with the particularity required by Fed.

R. Civ. P. 9(b) that Defendant Ocwen knowingly made misrepresentations upon which Plaintiffs.

(Motion to Dismiss, pp. 19-20). Plaintiffs counter that Defendants had knowledge that the LMA

contained inaccurate information because: (1) the Independent Audit in 2020 reached a conclusion

that the amount owed in the LMA was inflated; and (2) Defendants were involved in other court

cases. (Opposition, pp. 12-13).

In order to state an MMFPA claim, a plaintiff must plead the elements of a common law

fraud claim with particularity. *Galante v. Ocwen Loan Servicing LLC*, Civ. No. ELH-13-1939,

2014 WL 3616354, at *28 (D. Md. July 18, 2014). Under Maryland law, a plaintiff must allege

that:

> (1) that the defendant made a false representation to the plaintiff; (2) that its falsity
> was either known to the defendant or that the representation was made with reckless
> indifference as to its truth; (3) that the misrepresentation was made for the purpose
> of defrauding the plaintiff; (4) that the plaintiff relied on the misrepresentation and
> had the right to rely on it; and (5) that the plaintiff suffered compensable injury
> resulting from the misrepresentation.

*SpinCycle, Inc. v. Kalender*, 186 F. Supp. 2d 585, 590 (D. Md. 2002) (quoting *Alleco Inc. v. Harry*

*& Jeanette Weinberg Found., Inc.*, 340 Md. 176, 195, 665 A.2d 1038, 1047 (1995)).

In this case, Plaintiff alleges that: (1) the LMA contained inaccurate information; and (2)

because Defendant Ocwen has a history of "fraud and deception" in mortgage lending resulting in

other lawsuits and "consent decrees," Defendant Ocwen "knew [its] records contained inaccurate

information." (Amended Complaint, ¶¶ 69, 70, 71 73). As in *Ayres II,* this allegation is not

sufficient to state a claim because Plaintiffs did not meet Rule 9(b)'s requirements for particularity

in pleading false representations. *See Ayres II*, ECF No. 19, p. 18. In addition, Plaintiffs failed to allege any facts from which the Court can reasonably infer knowledge of falsity, or reliance on any fraudulent statements. *See Ayres I*, ECF No. 89, pp. 43-49 (dismissing Plaintiffs' MMFPA claim where Plaintiffs failed to allege reliance on misrepresentations). Accordingly, Defendants' Motion to Dismiss Plaintiffs' claim for a violation of the MMFPA arising from the LMA is granted.

### 3.   *Count Three: Negligent Misrepresentation*

Defendants argue that Plaintiffs fail to allege a duty of care for any of the Defendants because: (1) a consent order in another case does not create a duty on the part of Defendant Ocwen to Plaintiffs; and (2) to the extent Plaintiffs try to allege a negligence duty under Maryland common law, such a claim is precluded by collateral estoppel. (Motion to Dismiss, pp. 21-22). Plaintiffs counter that consent decrees issued in other cases create a duty of reasonable care between Defendants and Plaintiffs. (Opposition, pp. 13-15).

To state a claim for negligent misrepresentation, a plaintiff must allege the following:

(1) the defendant, owing a duty of care to the plaintiff, negligently assert[ed] a false statement; (2) the defendant intend[ed] that his statement [would] be acted upon by the plaintiff; (3) the defendant ha[d] knowledge that the plaintiff [would] probably rely on the statement, which, if erroneous, [would] cause loss or injury; (4) the plaintiff, justifiably, [took] action in reliance on the statement; and (5) the plaintiff suffer[ed] damage proximately caused by the defendant's negligence.

*Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 781 (4th Cir. 2013) (quoting *Goldstein v. Miles*, 159 Md. App. 403, 859 A.2d 313, 332 (2004)).

In this case, Plaintiffs allege that Defendant Ocwen owed the Plaintiffs "multiple duties of care" and negligently misrepresented: (1) amounts due in the LMA; and (2) amounts due in escrow. (Amended Complaint, ¶¶ 80, 81). Plaintiffs appear to allege that Defendant Ocwen also owed a

duty to Plaintiffs based on a settlement agreement between the Maryland Office of the Commissioner of Financial Regulation and Defendant Ocwen, "CFR FY 2017-13." (*Id.* ¶ 83).

In *Ayres II*, the court held that the issue of whether Plaintiffs "were owed a duty by Defendants and their privies" had been actually litigated in *Ayres I* such that collateral estoppel barred Plaintiffs' negligence claim, even though Plaintiffs had added claims regarding the LMA. *Ayres II*, ECF No. 19, p. 20.

Collateral estoppel bars the relitigation of an issue of fact or law "identical to issues which have been actually determined and necessarily decided in prior litigation in which the party against whom [collateral estoppel] is asserted had a full and fair opportunity to litigate." *In re Microsoft Corp. Antitrust Litig.*, 355 F.3d 322, 326 (4th Cir. 2004) (citation omitted).

In this case, although Plaintiffs have recast their negligence claim as a negligent misrepresentation claim, the issue of whether Defendants and their privies owe a duty to Plaintiffs has been litigated fully and actually determined. *See Ayres II*, ECF No. 19, p. 20 (issue of duty had been fully litigated and was precluded by collateral estoppel); *Ayres I*, ECF No. 89, pp. 46-41 (defendants did not owe duty as a mortgage servicer, fiduciary duty, a duty as a real estate professional, or a duty pursuant to Maryland regulations concerning good faith and fair dealing). In addition, the existence of a consent order in a case between the Maryland Office of the Commissioner of Financial Regulation and Defendant Ocwen does not create a duty to Plaintiffs. *Ensor v. Wells Fargo Bank Nat'l Ass'n*, Civ. No. CCB-21-324, 2022 WL 345513, at *4 (D. Md. Feb. 4, 2022) (no duty to homeowner arising from consent order between mortgage servicer and government). Accordingly, Defendant's Motion to Dismiss Plaintiffs' negligent misrepresentation claim based on the LMA is granted.

4. *Count Four: HOEPA, Regulation Z, Request for Injunctive Relief and Recission*

Defendants argue that Plaintiffs have not stated a claim under HOEPA because: (1) Defendants are not "creditors" under the Truth in Lending Act, 15 U.S.C. § 1602(f) (TILA); (2) TILA, HOEPA, and Regulation Z do not apply to loan modifications; (3) the LMA is not a high-cost mortgage under 15 U.S.C. § 1602(bb)(1)(A)(i); (4) Plaintiffs' loan is not negatively amortized; and (5) nothing in the Consent Order prohibited Defendant Ocwen from executing the LMA. (Motion to Dismiss, pp. 23-24). Plaintiffs counter that: (1) Defendants are creditors; (2) HOEPA applies to loan modifications; (3) the mortgage under the LMA is a high-cost mortgage; (4) the loan is negatively amortized; and (5) Defendant Ocwen was not licensed under the Maryland Consumer Loan Law and therefore could not enter into the LMA.[12] (Opposition, pp. 15-17).

The Truth in Lending Act (TILA), as amended by HOEPA, defines a "creditor" as a person "who both (1) regularly extends . . . consumer credit[;]" and  (2) "is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness." *Cetto v. LaSalle Bank Nat. Ass'n*, 518 F.3d 263, 269 (4th Cir. 2008); *see* 15 U.S.C. § 1602(g).[13] Put another way, to be liable under the TILA as a "creditor," the person or entity  must both regularly extend consumer credit and be the original lender or otherwise have an ownership interest in the loan. *See Davis v. Wilmington Fin., Inc.*, Civ. No. PJM 09-1505, 2010 WL 1375363, at *4 (D. Md. Mar. 26, 2010).  A servicer of a mortgage loan is not liable for alleged violations of

---

[12] A brief review suggests that the MCLL applies only to loans under $25,000. CL § 12-303(a); *see Nagle & Zaller, P.C. v. Delegall*, 2022 WL 3272458, at *9 (Md. 2022). Accordingly, Plaintiffs' argument lacks merit.

[13] Regulation Z was promulgated by the Federal Reserve Board to implement TILA and HOEPA and defines "creditor" consistently with TILA and HOEPA. *See Cetto v. LaSalle Bank Nat. Ass'n*, 518 F.3d 263, 269 (4th Cir. 2008) (providing explanation of TILA and Regulation Z definitions of "creditor").

TILA or HOEPA. *See, e.g.*, *Mbongo v. Specialized Loan Servicing, LLC*, Civ. No. PJM 15-2941, 2016 WL 8671841, at \*6 (D. Md. June 24, 2016); *Davis*, 2010 WL 1375363, at \*4.

In the Amended Complaint, Plaintiffs allege that Defendant Trustee is the owner of the loan and do not allege that Defendant Ocwen was involved with the original loan or was the party to whom the loan was "initially payable." (Amended Complaint, ¶ 15). Nor do Plaintiffs allege that Defendant Ocwen has any ownership interest in the loan. (*Id.*). Instead, because Plaintiffs consistently allege that Defendant Ocwen is the servicer of the mortgage loan and not the owner or assignee, Plaintiffs have not stated a claim against Defendant Ocwen for a violation of HOEPA. (*Id.*). *See Mbongo*, 2016 WL 86671841, at \*6.

Accordingly, the Court need not reach the remainder of the parties' arguments concerning this claim, and Defendants' Motion to Dismiss Plaintiffs' claim arising under HOEPA and Regulation Z is granted.

### 5. *Count Five: Clayton Act*

Defendants argue that Plaintiffs have not stated a claim under the Clayton Act because Plaintiffs have not alleged any conduct that could support a plausible claim that the LMA is a "violation of antitrust laws" or the Clayton Act. (Motion to Dismiss, p. 24). Plaintiffs counter that they have adequately pleaded violations of 15 U.S.C. § 15(a) and Section 5 of the Federal Trade Commission Act because Defendant Ocwen was "fraudulent." (Opposition, pp. 17-18).

The Clayton Act is a piece of antitrust legislation designed to protect competition by, e.g., prohibiting the acquisition of one corporation by another when such an acquisition would lessen completion or create a monopoly. *See, e.g.*, *Brown Shoe Co. v. United States*, 370 U.S. 294, 312, 313 (1962). The Amended Complaint is absent any facts to support a reasonable inference that

Defendant Ocwen violated any antitrust laws, including the Clayton Act. Accordingly, Defendants' Motion to Dismiss Plaintiffs' claim arising under the Clayton Act is granted.[14]

### 6. Count Nine: Unjust Enrichment

Defendants argue that Plaintiffs have failed to state a claim for unjust enrichment because Plaintiffs have not alleged any facts to support the assertion that Defendant Ocwen received a benefit. (Motion to Dismiss, pp. 36-37). Plaintiffs do not address or clarify this count as it relates to Defendant Ocwen or the LMA in their Opposition. (Opposition, pp. 30-31).

To establish a claim for unjust enrichment under Maryland law, a plaintiff must plead that:

(1) the plaintiff confer[red] a benefit upon the defendant; (2) the defendant knows or appreciates the benefit; and (3) the defendant's acceptance or retention of the benefit under the circumstances is such that it would be inequitable to allow the defendant to retain the benefit without the paying of value in return.

*Willis v. Bank of Am. Corp.*, Civ. No. ELH-13-02615, 2014 WL 3829520, at *27 (D. Md. Aug. 1, 2014) (citing *Benson v. State*, 389 Md. 615, 651-52, 887 A.2d 525, 546 (2005)).

A claim for unjust enrichment may not be brought "where the subject matter of the claim is covered by an express contract between the parties." *All Weather, Inc. v. Optical Sci., Inc.*, 443 F. Supp. 3d 656, 667 (D. Md. 2020) (citation omitted). However, a plaintiff may "plead in the alternative" by bringing claims for both unjust enrichment and breach of contract. *Id.* When a plaintiff does so, the plaintiff's claim for unjust enrichment "must include an allegation of fraud or bad faith in the formation of the contract." *Id.* (citing *Jones v. Pohanka Auto N., Inc.*, 43 F. Supp. 3d 554, 573 (D. Md. 2014)).

---

[14] To the extent Plaintiffs appear to allege that Defendants violated the Federal Trade Commission Act, 15 U.S.C. § 45, (Amended Complaint ¶¶ 101, 102, 103), the Court finds that this section of this statute does not provide a private right of action for an individual plaintiff. *See, e.g.*, *McGagh v. Cooper*, Civ. No. PX-19-1184, 2019 WL 5538055, at *2 (D. Md. Oct. 25, 2019) (dismissing FTCA claim with prejudice).

Plaintiffs alleged that Defendant Ocwen "unjustly enriched" itself by receiving "inaccurate outstanding loan amounts in the LMA." (Amended Complaint, ¶ 151). Plaintiffs' only allegation with regard to Defendant Ocwen refers explicitly to the contract governing the relationship between Plaintiffs and Defendant Ocwen. In addition, the Court cannot decipher from this conclusory allegation whether Plaintiffs are alleging that the LMA is inaccurate or the monthly statements following the LMA are inaccurate. In either case, the LMA governs the relationship between the parties, and Plaintiffs have not pleaded fraud or bad faith in the formation of the LMA in this claim, so Plaintiffs may not recover under a theory of unjust enrichment. *See Cnty. Comm'rs of Caroline Cnty. v. J. Roland Dashiell & Sons, Inc.*, 358 Md. 83, 95, 101, 747 A.2d 600, 607-08, 610 (2000).

Moreover, Plaintiffs have failed to plead any facts occurring after the final judgment in *Ayres I* from which this Court can reasonably infer that Defendant Ocwen unjustly enriched itself. Accordingly, Defendants' Motion to Dismiss Plaintiffs' claim for unjust enrichment against Defendant Ocwen related to the LMA is granted.

### B. Plaintiff's MCPA, MCDCA, MMFPA, FDCPA, and Breach of Contract claims arising from Defendant PHH's Management of their Escrow Account (Counts I, II, VII, VIII)

Defendants seek dismissal of Counts I, II, VII, and VIII, related to Defendant PHH's management of Plaintiffs' escrow account. They argue that: (1) Defendant PHH lawfully collected one-twelfth of the *estimated* taxes; (2) Plaintiffs are not entitled under any law to an escrow payment one-twelfth of the *actual* tax liability; and (3) Plaintiffs are not entitled to stop paying monthly payments after directly paying their real property taxes, when the LMA required that property taxes be held in escrow. (Motion to Dismiss, pp. 24-36).  Put another way, Defendants argue that because Defendant PHH has not actually overcharged the Plaintiffs' escrow account, Plaintiffs cannot state claims for Counts I, II, VII, and VIII because Plaintiff has not adequately

pleaded facts to support the conclusions that Defendant PHH made any false statements or took any actions that violated the FDCPA or breached the LMA.[15]

In support of these assertions, Defendants point to the relevant provisions in the Deed of Trust, the LMA, and RESPA, arguing that Defendant PHH was required to collect monthly escrow payments based on "current data and reasonable estimates of expenditures." (Motion to Dismiss, p. 28). Defendants also highlight Plaintiffs' tax information for Fiscal Years 2021 and 2022,[16] arguing that the documents show that Defendants' estimates were reasonable because: (1) Plaintiffs applied for and received a yearly Homeowners' Tax Credit, which is the reason that the anticipated expenditures diverged from the actual expenditures; and (2) Plaintiffs prepaid their property taxes in violation of the LMA. (*Id.*, p. 30; Reply, pp 10-17).  Plaintiffs counter that these same tax reports demonstrate that the estimates were not reasonable in light of Plaintiffs' actual tax obligations. (Opposition, pp. 18-19).

Construing liberally the allegations in the Amended Complaint and the documents properly before the Court in the light most favorable to the Plaintiffs, Plaintiffs have alleged that Defendant PHH has wrongly charged escrow payments in excess of a reasonable estimate of their real property tax liability. (Amended Complaint, ¶ 3, 34, 37, 49, 52, 53, 54, 56, 57, 59, 74, 75, 76, 77, 81, 116, 117, 118, 119, 121, 125, 129, 132, 133, 135, 144, 145). Because Defendants' arguments are predicated on a dispute of fact not suitable for resolution at this procedural stage, Defendants' Motion to Dismiss Counts I, II, VII, and VIII related to Defendant PHH's management of the Plaintiffs' escrow account is denied.

---

[15] To the extent that Plaintiff alleges that Defendant PHH breached the Deed of Trust, this Court agrees with Defendants that Defendant PHH is not a signatory or assignee of the Deed of Trust and therefore does not owe a contractual duty to Plaintiffs based on the Deed of Trust. *See Ayres I*, ECF No. 55, pp. 9-10 (dismissing breach of contract claim against loan servicer based on Deed of Trust).

[16] Defendants include information about Plaintiffs' real property taxes for fiscal year 2020, but upon review of the record, no party appended any document regarding fiscal year 2020 to substantiate Defendants' figures.

### C. Plaintiff's remaining claims arising from Defendant PHH's Management of their Escrow Account (Counts III, VI, IX)

#### 1. Count Three: Negligent Misrepresentation

As set forth more fully in Section IV.B.3., *supra*, Plaintiffs' Negligent Misrepresentation claim against their loan servicer(s) is barred by collateral estoppel. Accordingly, Defendants' Motion to Dismiss Count III related to Defendant PHH's management of Plaintiffs' escrow account is granted.

#### 2. Count Six: RESPA

Defendants argue that Plaintiffs have not stated a plausible violation of RESPA because: (1) Plaintiffs' emails to Defendant PHH do not qualify as QWRs creating a duty under RESPA; and (2) Plaintiffs have not alleged actual damages. (Motion to Dismiss, p. 37). Plaintiffs counter that although their requests were sent via email, RESPA only requires that a QWR be in writing. (Opposition, p. 23).

In order to state a claim for a violation of RESPA's QWR provisions, a plaintiff must allege: (1) "a written request that meets RESPA's definition of a QWR;" (2) that the "servicer failed to perform its duties;" and (3) actual damages. *McCray v. Bank of Am., Corp.*, Civ. No. ELH-14-02446, 2015 WL 3487750, at *8 (D. Md. June 1, 2015) (citation omitted). RESPA's implementing regulation, Regulation X, permits a loan servicer to "establish a separate and exclusive office and address for the receipt and handling of qualified written requests." *Id.* (quoting 24 C.F.R. § 3500.21(e)(1)). Establishing this separate address helps loan servicers to meet RESPA's requirements, and if a servicer designates a QWR address, then a borrower must send any inquiry to that address in order for it to be considered a QWR. *Bird v. Bank of New York Mellon Tr. Co., N.A.*, Civ. No. GLR-19-464, 2019 WL 4750289, at *7 (D. Md. Sept. 30, 2019).

In this case, Plaintiffs concede that they sent emails to what appears to be Defendant PHH's customer portal, not to the address listed as the designated address for QWRs stated on each of Plaintiffs' monthly mortgage statements. (Amended Complaint ¶ 112, ECF No. 34-2, pp. 12-16, 18; ECF No. 39-4, p. 2). Accordingly, Plaintiffs' emails do not count as QWRs and do not trigger a duty under RESPA. *McClain v. Wells Fargo Bank, N.A.*, No. 20-CV-2035, 2021 WL 3852322, at *2 (D. Md. Aug. 27, 2021) (granting motion to dismiss RESPA claim where plaintiff conceded that certain alleged QWRs were not sent to designated address). Accordingly, Defendants' Motion to Dismiss Plaintiffs' RESPA claim is granted.[17]

### 3.   Count Nine: Unjust Enrichment

Defendants argue that Plaintiffs have failed to state a claim for unjust enrichment because: (1) a written contract, the LMA governs the relationship between Defendant PHH and Plaintiffs; and (2) Plaintiffs have not alleged any facts that Defendant PHH received a benefit. (Motion to Dismiss, p. 36). Plaintiffs counter that Defendant PHH has retained "excess escrow fees," and have refused to refund such fees. (Opposition, p. 30).

As set forth above, where a contract defines the relationship between the parties, a plaintiff may not assert a claim for unjust enrichment unless the plaintiff also alleges fraud or bad faith in the formation of the contract. *See All Weather*, 443 F. Supp. 3d at 667; *Cnty Comm'rs*, 358 Md. at 96, 747 A.2d at 607. Plaintiffs allege that they have paid excessive escrow fees. (Amended Complaint, ¶¶ 150, 151). However, the LMA governs the relationship between the parties on this specific subject of how Defendant PHH is to calculate and collect payments to be held in escrow,

---

[17] To the extent that Plaintiffs allege that Defendant PHH collected escrow payments in excess of what was actually required for the payment of taxes and retained such excess in violation of 12 U.S.C. § 2605(g), Plaintiffs have not alleged an actionable violation of RESPA. *Richards v. Servis One, Inc.*, Civ. No. PX-20-3683, 2021 WL 3930130, at *5 (D. Md. Sept. 2, 2021) (granting motion to dismiss RESPA claim where plaintiff alleged that escrow payments exceeded actual tax obligation and lender kept those payments instead of refunding them to borrowers).

and Plaintiffs do not allege fraud or bad faith in the formation of the LMA relevant to this claim. (LMA, pp. 3-4). Accordingly, Plaintiffs may not recover under a theory of unjust enrichment, and Defendants' Motion to Dismiss Plaintiffs' unjust enrichment claim against Defendant PHH is granted.

## V.    MANNER OF DISMISSAL

Plaintiffs request that the Court grant leave to amend their Amended Complaint if the Court finds that they have failed to state claims upon which relief can be granted. (Opposition, pp. 31-32).[18] Where a court does not give leave to amend or engage in discussion as to why amendment would be futile, the dismissal should be without prejudice. *King v. Rubenstein*, 825 F.3d 206, 225 (4th Cir. 2016).

A court may properly deny leave to amend where amending a claim would be futile. *United States ex rel. Carson v. Manor Care, Inc*., 851 F.3d 293, 305 n.6 (4th Cir. 2017); *see also Adkins v. Bank of New York Mellon*, Civ. No. PWG-15-3886, 2017 WL 2215131, at *1 n.2 (D. Md. May 19, 2017) (dismissing claims with prejudice where plaintiff had already unsuccessfully attempted to amend the complaint to remedy deficiencies); *Sharma v. Rushmore Loan Mgmt. Servs., LLC*, Civ. No. GJH-18-656, 2020 WL 1323007, at *17 (D. Md. Mar. 20, 2020) (dismissing claims with prejudice where there are no facts plaintiffs could allege to plausibly state their claims).

### A.    Loan Modification Agreement

As set forth in Section IV.A., this Court dismisses Counts I, II, III, IV, V, IX as they relate to the LMA with prejudice for the reasons articulated herein. Regarding Counts I, II, and III, Plaintiffs have already had the opportunity to amend these claims to remedy any deficiencies.

---

[18] As a preliminary matter, the Fourth Circuit has held that a court does not abuse its discretion by declining to grant a "bare request in an opposition to a motion to dismiss" that lacks "any indication of the particular grounds on which amendment is sought." *United States ex rel. Carson v. Manor Care, Inc*., 851 F.3d 293, 305 n.6 (4th Cir. 2017) (citation omitted).

Because further amendment would be futile, Counts I, II, III, will be dismissed with prejudice. *See Adkins*, 2017 WL 2215131, at *1 n.2. Regarding Count IV, the Court finds that there are no facts that Plaintiffs could allege to render Defendants liable as creditors under the TILA as amended by HOEPA. Regarding Count V, the Court finds that there are no facts that Plaintiffs could allege to state an antitrust claim against Defendants. Regarding Count IX, the Court finds that: (1) Plaintiffs have already had an opportunity to amend their complaint regarding the legal significance of the facts surrounding the LMA; and (2) there are no facts that Plaintiffs could allege to state this claim, where Plaintiffs have also alleged the existence of a contract governing this subject. Accordingly, Counts IV, V, and IX will be dismissed with prejudice, as amendment would be futile. *See Sharma*, 2020 WL 1323007, at *17.

### B.  Escrow Account

Regarding Plaintiffs' claims arising from Defendant PHH's management of their escrow account, as set forth in Section IV.C., this Court dismisses Counts III, VI, IX. Regarding Count III, no amendment could change the preclusive effect of *Ayres I* on Plaintiffs' negligent misrepresentation claim. Accordingly, Count III is dismissed with prejudice. *Graves v. OneWest Bank, FSB*, Civ. No. PWG-14-1995, 2015 WL 2452418, at *7 (D. Md. May 20, 2015) (dismissing with prejudice on basis of collateral estoppel). Regarding Count VI, the Court finds that there are no facts that Plaintiffs could allege to state this claim under RESPA where Plaintiffs have conceded that their communications were not sent to the designated QWR address. Regarding Count IX, the Court finds that there are no facts that Plaintiffs could allege to state a claim where the subject of Plaintiffs' unjust enrichment claim, the amount to be held in escrow, is governed by a written contract. Accordingly, Counts VI, IX, are dismissed with prejudice. *See Sharma*, 2020 WL 1323007, at *1.

28

## VI.   CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss based on Rule 12(b)(6) is granted in part and denied in part. Regarding the LMA, Counts I, II, III, IV, V, and IX are dismissed with prejudice. Regarding the escrow account, Counts III, VI, and IX are dismissed with prejudice, and Counts I, II, VII, and VIII remain.

A separate Order will follow.

Date: September 19, 2022                              _____/s/_____
                                                     The Honorable Gina L. Simms
                                                     United States Magistrate Judge