IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Southern Division)

| | | |
|---|---|---|
| **STEPHEN M. AYRES *et al.*,** | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | **Case No. GLS 21-934** |
| **PHH MORTGAGE** | : | |
| **CORPORATION *et al.*,** | : | |
| | : | |
| Defendants. | : | |
| | : | |

## MEMORANDUM OPINION

*Pro se* Plaintiffs Stephen M. Ayres and Angela R. Ayres (collectively "Plaintiffs") filed the instant lawsuit against Defendants PHH Mortgage Corporation ("PHH"), Ocwen Loan Servicing, LLC ("Ocwen"), Hubert Paul ("Paul"), Authorized Officer of Ocwen Loan Servicing, and Bank of New York Mellon as Trustees for the Registered Holders of Solomon Brothers Mortgage Securities VII, Inc., Mortgage Pass-Through Certificates, Series 20001-2[1] ("BONY" and collectively, "Defendants"), advancing claims of mortgage fraud in violation of state and federal statutes. (ECF No. 77).

Now pending before this Court are the "Plaintiffs' Motion for Summary Judgment" and the "Defendants' Motion for Summary Judgment." (ECF Nos. 91, 92). Plaintiffs and Defendants both filed oppositions, and Replies. (ECF Nos. 97, 98, 99, 101). The matter has been fully briefed and, accordingly, no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2023).

This Memorandum Opinion only resolves those aspects of the pending cross motions for

---

[1] The docket sheet erroneously lists Defendant BONY as two separate defendants: (i) "Bank of New York Mellon, as Trustee for the Registered Holders of Solomon Brothers Mortgage Securities VII, Inc." and (ii) "Mortgage Pass-Through Certificates, Series 2001-2."

summary judgment related to: (a) Counts VII, VIII, and IX against all Defendants; and (b) Counts I-II against Defendants Ocwen, Paul, and BONY. For the reasons set forth below, the Plaintiffs' Motion for Summary Judgment against all Defendants (Counts VII-IX) is **DENIED,** and is **DENIED** against Defendants Ocwen, Paul, and BONY (Counts I-II)**.** In addition, the Defendants' Motion for Summary Judgment is **GRANTED** related to all Defendants (Counts VII-IX ), except for those Declaratory Judgment Act claims related to Counts I-II, and **GRANTED** related to Defendants Ocwen, Paul, and BONY (Counts I-II).[2]

## I.    BACKGROUND

### A.  Prior Lawsuits Involving the Same Property

The property at issue in the instant case is a house located at 6600 Halleck Street, District Heights, Maryland, 20747 ("Halleck Property). (ECF No. 77, "Second Amended Complaint," p. 4). The Halleck Property is the same property at issue in two prior civil actions filed by the Ayres in the U.S. District Court in Maryland. Those lawsuits involved some of the same defendants now being sued in the case before this Court.[3] A more detailed summary of the prior litigation history can be found in this Court's Memorandum Opinion resolving a motion to dismiss filed by the Defendants. (ECF No. 43, "Memorandum Opinion," pp. 2-4).

---

[2] After issuance of this Memorandum Opinion, then, what remains for resolution are the cross motions for summary judgment related to Counts I-II, against Defendant PHH only, which the Court will separately address.

[3] On June 3, 2013, Plaintiffs filed a complaint against Defendant Ocwen and several other defendants in federal court, alleging that the defendants had committed fraud in connection with the Halleck Property. (Civ. No. CCB 13-1597, "*Ayres I*," ECF No. 1). On November 9, 2016, the district court granted summary judgment in favor of defendants as to a number of Plaintiffs' claims and denied Plaintiffs' motion for partial summary judgment. (*Ayres I*, ECF Nos. 158, 159). Plaintiffs appealed the order, and the Fourth Circuit remanded the case back to the trial court. (*Ayres*, ECF No. 163). On remand, the district judge issued a memorandum opinion and order entering judgment on all claims in favor of the defendants. (*Ayres I*, ECF Nos. 171, 172). On appeal, the Fourth Circuit affirmed this decision. (*Ayres I*, ECF No. 179). Subsequently, on January 7, 2020, Plaintiffs filed a complaint in Prince George's County Circuit Court against Defendants Ocwen and BONY related to the Ayres Loan, alleging violations of state and federal consumer fraud statutes and seeking declaratory and injunctive relief. After removing the matter to federal court, the defendants filed a motion to dismiss, asserting *res judicata* and other defenses. (Civ. No. GJH 20-275, "*Ayres II*," ECF Nos. 2, 10-1). On June 29, 2020, the district court issued a memorandum opinion and an order granting the defendants' motion to dismiss. (*Ayres II*, ECF Nos. 19, 20). On appeal, the Fourth Circuit affirmed the trial court's decision, modifying the order to dismiss the complaint without prejudice. (*Ayres II*, ECF No. 25-2).

## B. Procedural Background

On June 16, 2021, the Plaintiffs filed the instant lawsuit against Defendants PHH, Ocwen, Paul, and BONY. (ECF No. 1). Subsequently, Plaintiffs filed an Amended Complaint. (ECF No. 34). Defendants then filed a motion to dismiss, which Plaintiffs opposed, and Defendants filed a Reply. (ECF Nos. 39, 41, 42).

By Memorandum Opinion and Order, this Court dismissed with prejudice claims related to the Loan Modification Agreement in Counts I, II, III, IV, V, and IX and claims related to the escrow account in Counts III, VI, and IX. (ECF Nos. 43, 44). Pursuant to the Court's Memorandum Opinion and Order, Counts I, II, VII, VIII, and IX remained, but only related to PHH's management of the escrow account associated with the Halleck Property. (ECF Nos. 43, 44).

Thereafter, with the Court's leave, Plaintiffs filed a Second Amended Complaint. (ECF Nos. 74, 75). The Second Amended Complaint advances the following claims: Count I against all Defendants for violating the Maryland Consumer Protection Act ("MCPA"), Md. Code Ann., Com. Law § 13-101 *et seq.*, and the Maryland Consumer Debt Collection Act ("MCDCA"), Md. Code Ann., Com. Law § 14-201 *et seq.*; Count II against Defendants Ocwen, Paul, and PHH for violating the Maryland Mortgage Fraud Protection Act ("MMFPA"), Md. Code Ann., Real Prop. § 7-401 *et seq.*; Count VII against all Defendants for violating the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*; Count VIII against all Defendants for breach of contract; and Count IX against all Defendants under the Declaratory Judgment Act, and for violating the Maryland Credit Grantor Closed End Credit Act ("CLEC"), Md. Code Ann., Com. Law § 12-1001 *et seq.* (Second Amended Complaint, pp. 8-25). In the Second Amended Complaint, Plaintiffs pleaded acts that occurred in or about 2019 to in or about 2022. (Second Amended Complaint, ¶ 90).

Scheduling Orders were entered, discovery occurred and concluded, and both parties filed summary judgment motions. (ECF Nos. 76, 86, 91, 93, 97, 98, 99, 101).

**C. Factual Background Relevant to Counts I, II, VII-IX[4]**

On March 18, 1991, Plaintiff Stephen Ayres financed the purchase of the Halleck Property by borrowing $72,600.00 from Market Street Mortgage Corporation (the "Ayres Loan"). (2nd JA0003-06).[5] Defendant BONY is the beneficial owner and holder of the Ayres Loan as trustee for the Registered Holders of Salomon Brothers Mortgage Securities VII, Inc., Mortgage Pass-Through Certificates, Series 2001-2. (2nd JA0015). Defendant Ocwen was the mortgage servicer of the Ayres Loan between November 2011 and June 1, 2018. (Second Amended Complaint, ¶ 26; 2nd JA0035)

On November 19, 2018, Defendant Ocwen approved the Plaintiffs' request for a loan modification, and on November 27, 2018, the Plaintiffs executed the Loan Modification Agreement ("LMA"). (2nd JA0007-23). Pursuant to the terms of the LMA, Defendant Ocwen established an escrow account to collect and hold funds to pay for "escrow items" listed in the LMA, namely: taxes and assessment fees; leasehold payments; insurance premiums; and any community dues or fees associated with the Halleck Property. (2nd JA0019). In January 2019, the Ayreses began making monthly payments into the escrow account. (2nd JA0064-65).

---

[4] For purposes of resolving the cross motions for summary judgment, the Court viewed all evidence in the light most favorable to the nonmoving party. *Sedar v. Reston Town Ctr. Prop., LLC*, 988 F.3d 756, 761 (4th Cir. 2021). Because this Memorandum Opinion grants summary judgment in favor of certain defendants for certain claims, the facts herein are construed in the light most favorable to the Plaintiffs, the non-moving party.

[5] In support of their cross motions for summary judgment, the parties jointly notified the Court that they would be submitting separate Joint Appendices. (ECF No. 100). Thereafter, the parties amended and filed those Joint Appendices. (ECF Nos. 102-103). The First Amended Joint Appendix ("First Amended JA") contains evidence in support of Plaintiffs' summary judgment motion: First Amended JA Nos. 0001-91. Defendants did not include any exhibits in the First Amended JA. The Second Amended Joint Appendix ("Second Amended JA") contains evidence in support of Defendants' summary judgment motion, and evidence in support of Plaintiff's summary judgment motion. Defendants' submissions can be found in this range: Second Amended JA Nos. 0001-176, 0233-395. Plaintiffs' submissions can be found in this range: Second Amended JA Nos. 0177-232. The Court will refer to the documents contained therein as, e.g., 1st JA0001 or 2nd JA0002. The Court finds that because all of the exhibits in the First Amended JA can be found in the Second Amended JA, the Court will refer only to the Second Amended JA.

On June 1, 2019, Defendant PHH took over servicing the Ayres Loan and management of the escrow account. (2nd JA0035). Between in or about June 1, 2019 until in or about August 2024, the Plaintiffs have continued to make monthly payments into escrow. (2nd JA0024-34. In addition, since executing the LMA, the Plaintiffs have remained current on the Ayres Loan. (2nd JA0024-34; Deposition of Angela Ayres, "Mrs. Ayres Dep.," 56:3-13, 2nd JA0336).

## II.    THE LAW

Motions for summary judgment shall be granted only if there are no genuine issues as to any material fact, such that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A fact is material if it might affect the outcome of the suit under the governing law." *Jones v. Chandrasuwan*, 820 F.3d 685, 691 (4th Cir. 2016).

The moving party bears the burden of showing that there is no genuine issue as to any material fact. Fed. R. Civ. P. 56(a); *Wit Man Tom v. Hospitality Ventures, LLC*, 980 F.3d 1027, 1037 (4th Cir. 2020). The burden can be satisfied through the submission of, e.g., depositions transcripts, answers to interrogatories, admissions, declarations, stipulations, and affidavits. *Celotex Corp.*, 477 U.S. at 323; *Barwick v. Celotex Corp.*, 736 F.2d 946, 958 (4th Cir. 1984); *see also* Fed. R. Civ. P. 56(c)(1)(A).

The Court must construe the facts and documentary materials submitted by the parties in the light most favorable to the party opposing the motion. *Sedar v. Reston Town Ctr. Prop., LLC*, 988 F.3d 756, 761 (4th Cir. 2021). To defeat a motion for summary judgment, the nonmoving party cannot simply rest on allegations averred in its opposition or other brief. Rather, the nonmoving party must demonstrate that specific material *facts* exist that give rise to a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 323; *see also* Fed. R. Civ. P. 56(c)(1).

Summary judgment is inappropriate if sufficient evidence exists from which a reasonable jury may decide in favor of the non-movant. *Anderson*, 477 U.S. at 250. "[I]n the face of conflicting evidence, such as competing affidavits, summary judgment ordinarily is not appropriate because it is the function of the fact-finder to resolve factual disputes, including matters of witness credibility." *U.S. Equal Emp. Opportunity Comm'n v. Ecology Servs., Inc.*, 447 F. Supp. 3d 420, 437 (D. Md. 2020) (citing *Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006), and then citing *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002)). However, the "mere existence of a scintilla of evidence in support of the [non-movant]" is insufficient to create an issue of material fact. *Anderson*, 477 U.S. at 248.

When a court is faced with cross-motions for summary judgment "the court must review each motion separately on its own merits 'to determine whether either of the parties deserves judgment as a matter of law.'" *Lemma v. CalAtlantic Grp., Inc.*, 643 F. Supp. 3d 564, 573 (D. Md. 2022) (quoting *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003)). Importantly, "[s]imply because both parties have filed for summary judgment does not mean that summary judgment to one party or another is necessarily appropriate. Rather, '[b]oth motions must be denied if the court finds that there is a genuine issue of material fact.'" *Baltimore Scrap Corp. v. RLI Ins. Co.*, 493 F. Supp. 3d 433, 44-45 (D. Md. 2020) (quoting Wright & Miller, 10A Fed. Prac. & Proc. § 2720 (4th ed.)).

## III.    DISCUSSION

### A.  Plaintiffs' Claims Against Defendants Ocwen, Paul, and BONY

Plaintiffs contend that summary judgment in their favor is appropriate against Defendants Ocwen, Paul, and BONY. (ECF No. 91-1, "Pl. Motion," pp. 10-13). In their motion, Plaintiffs generally aver that all Defendants unlawfully overcharged them by collecting in escrow more than

1/12 the annual amount authorized by the Deed of Trust. (*Id.*).

Defendants contend that summary judgment as to Defendants Ocwen, Paul, and BONY is appropriate for two reasons. First, these defendants are not "debt collectors" within the meaning of the FDCPA. Accordingly, as a matter of law, summary judgment in their favor on Count VII is required. Second, Plaintiffs have failed to produce evidence that Defendants Ocwen, Paul, and BONY engaged in any act or omission related to the management of the escrow account. Thus, summary judgment must be entered in their favor for Counts I, II, VII-IX. (ECF No. 92-1, "Def. Motion," pp. 2, 9, 12).

In opposing entry of summary judgment in favor of Defendants Ocwen, Paul, and BONY, Plaintiffs appear to advance three arguments. First, these defendants are "debt collectors" within the meaning of the FDCPA because: (a) the Court in *Ayres II* already found them to be debt collectors; and (b) on December 6, 2011, Ocwen sent a notice of default to the Plaintiffs with the language "this communication is from a debt collector attempting to collect a debt." Second, no genuine dispute of material fact exists to refute that Defendants Ocwen breached the Deed of Trust and violated the CLEC by collecting more than permitted for annual disbursements for taxes and insurance. Thus, summary judgment should be entered in favor of Plaintiffs on all counts involving Defendant Ocwen. Third, even when construing the facts in the light most favorable to Defendant Ocwen, a reasonable jury could only find that Defendant Ocwen is vicariously liable for Defendant PHH's unlawful acts. (Pl. Motion, pp. 11-12; ECF No. 98, "Pl. Opposition," pp. 2-3, 11; ECF No. 101, "Pl. Reply," p. 2). According to Plaintiffs, then, they are entitled to entry of summary judgment in their favor on all counts involving these defendants.

In the Reply, Defendants assert that they are not "debt collectors" under the FDCPA for the following reasons: (1) the *Ayres II* lawsuit did not contain an FDCPA claim, so that court could

not have found them to be debt collectors under that statute; and (2) when analyzing the law governing the FDCPA, it is irrelevant that Defendant Ocwen called itself a "debt collector." (ECF No. 99, "Def. Reply," pp. 8-9).

As a preliminary matter, before analyzing the parties' summary judgment arguments, it is important to note what Plaintiffs actually pleaded in the Second Amended Complaint related to the period of in or about 2019 until in or about 2022. In Count I, Plaintiffs only pleaded conduct allegedly committed by Defendants Ocwen and PHH; Plaintiffs never pleaded that Defendants Paul or BONY committed any unlawful acts during this time frame. (Second Amended Complaint, ¶¶ 34-57). In Count VII, Plaintiffs only pleaded conduct allegedly committed by Defendants Ocwen and PHH; Plaintiffs never pleaded that Defendants Paul or BONY committed any unlawful acts during this time frame. (*Id.*, ¶¶ 76-86). In Count VIII, Plaintiffs only pleaded conduct allegedly committed by Defendant PHH; Plaintiffs never pleaded that Defendants Ocwen, Paul, or BONY committed any unlawful acts during this time frame. (*Id.*, ¶¶ 87-97). Plaintiffs have not affirmatively pleaded a conspiracy, and the Court declines to so construe their pleading at the summary judgment stage.

Next, the parties are reminded that the Court has already dismissed all allegations involving the conduct of Defendants Ocwen, Paul, and BONY related to: the original loan, Deed of Trust, any default on the original loan before the LMA, and the LMA. *See* Memorandum Opinion, pp. 27-29. What remains for resolution, then, are only those claims alleging liability related to the management of the escrow account. Thus, in order for Defendants Ocwen, Paul, and BONY to be liable for the allegations in the Second Amended Complaint, Plaintiffs must establish that these three defendants committed acts or omissions related to PHH's management of that escrow account.

Furthermore, upon review of the record, and construing the facts in the light most favorable to the Plaintiffs,  the Court finds that there is no evidence that Defendants Ocwen, Paul, or BONY performed any act or engaged in any omission related to PHH's management of the Ayreses' escrow account during the relevant period, namely in or about 2020 until in or about 2022. (2nd JA0001-395). Thus, regardless of whether these three defendants qualify as "debt collectors" under the FDCPA, there are no facts before the Court that establish that Defendants Ocwen, Paul, or BONY engaged in any act or omission related to the management of the escrow account such that they could be found liable for violating the FDCPA, MCPA, MCDCA, MMFPA, or CLEC. Relatedly, there is no evidence before the Court that Defendants Ocwen, Paul or BONY breached any contract. (2nd JA0001-395). Indeed, Plaintiffs do not argue that Defendants Ocwen, Paul, or BONY engaged in any acts or omissions related to PHH's management of the escrow account during the relevant time period. (Pl. Motion; Pl. Opposition; Pl. Reply).[6] On this basis alone, summary judgment in favor of Defendants Ocwen, Paul, and BONY on Counts I, II, VII, VIII and IX is appropriate.

Next, even though not required to do so, the Court considered Plaintiffs' arguments that these three defendants are somehow vicariously liable.  In particular, the Court has reviewed the legal landscape within this Circuit on the issue of which entities or actors may be held vicariously liable under the FDCPA for mortgage-related collection activities performed by others. Although, the Fourth Circuit has not yet ruled on what constitutes vicarious liability under the FDCPA, at least one court in this District has held that "an entity which itself meets the definition of debt

---

[6] In support of their request for entry of summary judgment in their favor, Plaintiffs contentions cite to conduct that pre-dates the LMA and establishment of the escrow account. *See generally* Pl. Motion; Pl. Opposition; Pl. Reply. Such conduct is not relevant to meeting their burden of proof against Defendants Ocwen, Paul, and BONY on the claims that remain. Next, to the extent that Plaintiffs are trying to revive causes of action against Defendant Ocwen arising out of the LMA, and/or related to Ocwen's representations about the loan and the amount of the unpaid balance on the loan, such claims have been dismissed with prejudice and thus Plaintiffs are foreclosed from doing so. (ECF No. 43, pp. 14-23, 27-29).

collector may be held vicariously liable for the unlawful collection activities carried out by another on its behalf." *See, e.g., Long v. Pendrick Capital Partners II, LLC*, 374 F. Supp. 3d 515, 535 (D. Md. 2019) (further citation omitted). The Court, however, need not determine whether Defendant Ocwen meets the definition of a "debt collector" because, even when construing the facts in the light most favorable to Plaintiffs, the only evidence regarding the relationship between Defendants Ocwen and PHH is the servicing transfer notice. (2nd JA0035-37). Based on this evidence, a reasonable jury could only find that Ocwen ceased servicing the loan and playing any role relevant to the Halleck Property when Defendant PHH took over as servicer. Accordingly, there is no evidence from which a jury could reasonably find that Defendant PHH engaged in collection activities carried out on Defendant Ocwen's behalf. In addition, for the reasons discussed *infra* in Section III.B, the Court finds that Defendant PHH, as a matter of law, cannot be a "debt collector" under the FDCPA. Accordingly, there are no "unlawful collection activities" for which Defendant Ocwen can be held vicariously liable.

In sum, when viewing the facts in the light most favorable to Plaintiffs, and drawing all reasonable inferences in their favor, the Court cannot find that a reasonable jury could conclude that Defendants Ocwen, Paul, or BONY violated the MCPA, MCDCA, MMFPA, FDCPA, CLEC, or breached any contract in relation to PHH's management of the escrow account. Accordingly, summary judgment in favor of Defendants Ocwen, Paul, and BONY is granted on Counts I, II, VII, VIII, and IX.

**B.  Count VII: FDCPA Claim Against PHH**

In Plaintiffs' summary judgment motion, they aver that they are entitled to entry of judgment in their favor on their FDCPA claim because, during in or about 2020 until in or about 2022, Defendant PHH knowingly made false and deceptive statements to them in the course of

collecting monies to be held in the escrow account. Specifically, Plaintiffs contend that the escrow statements falsely claimed that they owed more money than they actually did, which resulted in Defendant PHH collecting more than 1/12 of the annual amount authorized by the Deed of Trust. (Pl. Motion, pp. 11-12).

In opposing Plaintiffs' motion, Defendant PHH asserts that summary judgment in its favor is appropriate because it is not a "debt collector" as that term is defined by the FDCPA. According to Defendant PHH, at the time that it took over servicing the Ayres Loan from Ocwen, the Ayres Loan was not in default. Rather, Plaintiffs have remained current on the Ayres Loan since executing the LMA, i.e., since in or about November 2018. Thus, pursuant to the FDCPA, there was no "debt" for Defendant PHH to collect. Alternatively, Defendant PHH contends that even if it is a debt collector, it did not violate the FDCPA in its management of the escrow account because the escrow statements were not false, deceptive, or misleading, nor did Defendant PHH attempt to collect a debt without the right to do so. (Def. Motion, pp. 11-15; Reply, pp.8-10).

Plaintiffs counter that they are entitled to summary judgment on their FDCPA claim because: (1) PHH is a debt collector; the *Ayres II* court found "that not only was Ocwen a debt collector but that PHH, Ocwen's successor in interest . . . [is] considered the same for purposes of res judicata" (Pl. Opposition, p. 3); and (2) Defendant PHH violated the FDCPA when "PHH sent Plaintiffs monthly billing statements with the incorrect loan balance and escrow amount" thereby overcharging the account which resulted in escrow account surpluses (*Id.*, pp. 3-4).

The Court will first address the threshold question of whether Defendant PHH is a "debt collector" under the FDCPA. The FDCPA defines "debt collector" as follows:

> The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who

> regularly collects or attempts to collect, directly or indirectly, debts
> owed or due or asserted to be owed or due another.

15 U.S.C. § 1692a(6).

The FDCPA explicitly excludes from the definition of "debt collector" any person or entity "collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person." *Id.* § 1692a(6)(F). Put another way, "a person collecting nondefaulted (sic) debts on behalf of others is not a debt collector." *Henson v. Santander Consumer USA, Inc.*, 817 F.3d 131, 136 (4th Cir. 2016) (explaining that Congress intended to "protect those entities that function as loan servicers for debt not in default"), *aff'd*, 582 U.S. 79 (2017).

Analyzing the relevant law, and construing the facts in the light most favorable to Plaintiffs, the Court finds that Defendant PHH is not a "debt collector" within the meaning of the FDCPA. The  undisputed evidence before the Court is that on November 19, 2018, Defendant Ocwen approved the Plaintiffs' request for a loan modification, and on November 27, 2018, Plaintiffs executed the LMA. (2nd JA0007-23). Pursuant to the terms of the LMA, Defendant Ocwen established an escrow account, and in January 2019, the Ayreses began making payments into that escrow account. (2nd JA0016-17; 2nd JA0064-65). The undisputed evidence is that on or about June 1, 2019, Defendant PHH took over servicing the Ayres Loan and management of the escrow account. (2nd JA0035). Since December 1, 2018, when the terms of the LMA came into effect, Plaintiffs have remained current on the Ayres Loan. (2nd JA0024-34). Indeed, the transaction history reflects that for the period of January 2019 up until August 2024, on or about the first day of each month, the Plaintiffs have consistently made payments into the escrow account. (*Id.*). Moreover, Plaintiff Angela Ayres testified that the Plaintiffs have remained current on the Ayres Loan since executing the LMA in November 2018. (Mrs. Ayres Dep., 2nd JA0336). Thus, the only

reasonably logical inference that can be drawn from the evidence is that the Ayres Loan has not been in default since the LMA came into effect and thus was not in default at the time that Defendant PHH began servicing the loan on or about June 1, 2019. Thus, even when viewing the facts in the light most favorable to Plaintiffs and drawing all reasonable inferences in their favor, there was no "debt" in default under the FDCPA when Defendant PHH began servicing the Ayres Loan, and Defendant PHH cannot be a "debt collector." Plaintiffs' FDCPA claim, therefore, fails as a matter of law. Accordingly, as to Count VII, summary judgment will be granted in Defendant PHH's favor.

Because the Court has granted summary judgment in favor of Defendant PHH, the Court need not address the parties' additional arguments related to Plaintiffs' FDCPA claim.

### C. Count VIII: Breach of Contract Against PHH

In their summary judgment motion, Plaintiffs assert that they are entitled to entry of summary judgment in their favor on Count VIII because PHH breached paragraph 2 of the Deed of Trust by collecting from them and holding in the escrow account more than 1/12 of the annual amount authorized to be paid out for escrow items. (Pl. Motion, p. 12; Pl. Reply, pp. 5-6).

Defendant PHH contends that it is entitled to summary judgment on Plaintiffs' breach of contract claim for three reasons. First, Plaintiffs allege in the Second Amended Complaint that PHH breached paragraph 2 of the Deed of Trust by charging them double the required escrow payment amounts, but PHH is not a signatory to the Note or Deed of Trust. Thus, PHH cannot be held liable for breach of contract. Second, Plaintiff Angela Ayres is not a signatory to the Deed of Trust and therefore lacks standing to advance a breach of contract claim. Third, even assuming that Defendant PHH is somehow contractually bound by the Deed of Trust to act in a certain fashion, the unrefuted evidence demonstrates that PHH properly calculated the amounts to be held

in escrow; therefore, there is no breach of paragraph 2 of the Deed of Trust. (Def. Motion, pp. 18-19).

In opposing entry of summary judgment in favor of Defendant PHH, Plaintiffs contend that Defendant PHH can be held liable under Count VIII for breach of contract for three reasons. First, Plaintiff Angela Ayres has standing to pursue this claim because in *Ayres I*, the Defendants argued that "Mrs. Ayres was a borrower based on a Forbearance Agreement she signed, [and] now for the sake of this action they are claiming Mrs. Ayres has no standing for the Breach of Contract claim as she is not on the original note." (Pl. Opposition, p. 6). Thus, all Defendants are "judicially estopped" from challenging her standing in the instant case. Alternatively, Plaintiff Angela Ayres asserts that she has standing because she was added as a borrower on the Ayres Loan by signing the LMA. Second, Defendant PHH's claim that it was not a party to the Note or Deed of Trust fails because the Real Estate Settlement Procedures Act ("RESPA") "requires the servicer to follow statutory mandates one of which is to escrow 1/12 of the annual tax payments." (*Id.*, p. 7). Third, Defendant PHH assumed the obligations of the original lender when it began servicing the Ayres Loan; thus, as an assignee, Defendant PHH does not have to be a signatory to the Note or Deed of Trust to be found liable for breach of contract. (*Id.*, pp. 6-8). Ultimately, Plaintiffs aver that the Deed of Trust, not the LMA, controls Defendant PHH's escrow obligations and that PHH breached the Deed of Trust by collecting more than permitted under paragraph 2. (*Id.*, pp. 7-8; Pl. Reply, pp. 5-6).

In the Reply, Defendant PHH asserts that Plaintiffs' breach of contract claim fails because the Deed of Trust does not govern PHH's escrow obligations; rather, it is only the LMA that dictates PHH's escrow obligations. Thus, because the Second Amended Complaint does not allege

that Defendant PHH breached the LMA, Plaintiffs' breach of contract claim fails. (Def. Reply, pp. 10-11).

As a preliminary matter, the Court will address arguments advanced in Defendants' summary judgment motion and opposition because such arguments raise threshold issues that must be resolved before the Court can address whether entry of summary judgment is appropriate on Plaintiffs' breach of contract claim.

To establish a breach of contract claim under Maryland law, Plaintiff must prove: (1) the existence of a contractual obligation owed by a defendant to a plaintiff; (2) a material breach by the defendant; and (3) damages. *See Tucker v. Specialized Loan Servicing, LLC*, 83 F. Supp. 3d 635, 655 (D. Md. 2015); *RRC N.E., LLC v. BAA Md., Inc*., 944 A.2d 430, 442 (Md. 2010). In Maryland, a contract "is an agreement creating rights or obligations between two or more parties." Maryland Pattern Jury Instructions ("MPJI-Cv 9:1") (2023). An entity's or a person's duty to not violate the law  does not create a "contract," as that term is understood in Maryland. *Id.*

Regarding the "contract" at issue, in the Second Amended Complaint, Plaintiffs allege that Defendant PHH had a "uniform contractual obligation to charge only fees explicitly allowed under the Deed of Trust and applicable law." (Second Amended Complaint, ¶ 90). According to Plaintiffs, Defendant PHH overcharged them on the escrow payments actually due for the period of 2020-2022, which means that Defendant PHH "breached an enforceable contract and failed to perform according to the terms of the Deed of Trust." (*Id.*, ¶ 97). Next, when evaluating the evidence before the Court in the light most favorable to Plaintiffs, Plaintiff Angela Ayres testified that the breach of contract allegations in the Second Amended Complaint are based only on the Deed of Trust and the Note. (Mrs. Ayres Dep., 2nd JA0327-29).  Accordingly, the Court finds that

Plaintiffs must establish that the Deed of Trust or the Note imposed upon Defendant PHH a contractual duty relevant to its management of the escrow account.

Analyzing the relevant caselaw, and construing the facts in the light most favorable to Plaintiffs, the Court finds that there is no evidence in the record that Defendant PHH owed Plaintiffs a contractual duty under the Deed of Trust or the Note. Indeed, Defendant PHH did not sign the Deed of Trust or the Note. (2nd JA0001-06). Accordingly, neither the Deed of Trust nor Note contractually obligate Defendant PHH to the Plaintiffs. *See Ayres v. Ocwen Loan Servicing, LLC*, Civ. No. WDQ 13-1597, 2014 WL 4269051, at *4 (D. Md. Aug. 27, 2014) (dismissing the breach of contract claim against a loan servicer based on the Deed of Trust).

Plaintiffs next appear to argue that RESPA requires a servicer abide by certain statutory mandates. (Pl. Opposition, p. 7). While that may be true, the statute by itself does not impose a contractual obligation upon Defendant PHH. *See* 12 U.S.C. § 2605(g); 12 C.F.R. §1024.17; *see also* MPJI-Cv 9:1 (2023) (defining a contract). Plaintiffs finally appear to assert that there is some sort of privity of contract between Defendants Ocwen and PHH. (Pl. Opposition, p. 7). Even if that were true, Defendant Ocwen—like PHH—is not a signatory to the Deed of Trust or Note and thus is not contractually obligated to the Plaintiffs under either. (2nd JA0001-06).[7]

Finally, because the Court has found that Defendant PHH does not owe a contractual obligation to the Plaintiffs under the Deed of Trust or Note, the Court need not address the parties' additional breach of contract arguments related to standing or the LMA.

In sum, summary judgment shall be granted in Defendant PHH's favor on Count VIII.

---

[7] Regarding, the issue of standing related to Plaintiff Angela Ayres, Defendant PHH was not a party in *Ayres I*. Thus, it cannot be estopped from advancing standing arguments against Plaintiff Angela Ayres because it did not have a "full and fair opportunity to litigate the issue in the previous forum." *Lucero v. Early*, Civ. No. GLR 13-1036, 2018 WL 4333745, at *3 (D. Md. Sept. 11, 2018) (further citation omitted) (listing the elements of collateral estoppel).

### D.  Count IX: Declaratory Judgment and CLEC Claims Against PHH

In Count IX of the Second Amended Complaint, Plaintiffs generally allege that "Defendants violated [CLEC] by collecting more principle (sic), interest and other fees than is owed on the loan." (Second Amended Complaint, ¶ 101).  Plaintiffs also allege that Defendants agreed to be governed by CLEC because the Deed of Trust provides that the "Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located." (*Id.*, ¶ 105). Moreover, Plaintiffs allege that Defendants violated that provision of CLEC that entitles them to declaratory and injunctive relief. (*Id.*, ¶ 106).

In their summary judgment motion, Plaintiffs assert that they are entitled to entry of summary judgment in their favor on Count IX because, even when construing the facts in the light most favorable to Defendants, the evidence establishes that Defendant PHH violated CLEC when it collected more principal, interest, and other fees than owed on the loan. (Pl. Motion, p. 13).

Defendant PHH contends that it is entitled to entry of summary judgment in its favor on Plaintiffs' CLEC and Declaratory Judgment Act claims for three reasons. First, there is no evidence that in March 1991 the lender affirmatively elected to have CLEC govern the lending agreement. Because CLEC only applies if the lender so elects, CLEC does not apply to the Ayres Loan, and thus Defendant PHH cannot have violated CLEC. Relatedly, the Deed of Trust and Note were form documents that do not constitute an affirmative election under Maryland law. Second, even if CLEC did apply, there is no evidence that PHH collected more than permitted under the terms of the loan or CLEC. Third, because there is no viable CLEC claim, to the extent that Plaintiffs assert a standalone Declaratory Judgment Act claim, it must be dismissed because such relief is not an independent cause of action. (Def. Motion, pp. 15-18).

Plaintiffs counter that CLEC applies to the Ayres Loan because: (1) the current version of

CLEC provides that the statute does not apply to lending agreements executed prior to October 1, 1993; and (2) Defendant PHH's claim that a form deed or note is not an affirmative election lacks merit because the Deed of Trust was prepared and signed by Dawn Collins. Thus, Plaintiffs contend that Defendants are liable under CLEC and that they are entitled to injunctive and declaratory relief under CLEC. (Pl. Opposition, pp. 4-5; Pl. Reply, p. 4).

Defendant PHH maintains that it is entitled to summary judgment because at the time the Deed of Trust was executed, CLEC required that a lender affirmatively elect for CLEC to apply to a lending agreement and that there is no evidence in the record of such an election. (Def. Reply, pp. 7-8).

As a preliminary matter, the Court has reviewed CLEC and its legislative history. Contrary to Plaintiffs' assertions that prior to October 1993 the CLEC election provision did not apply to lending agreements, the statute that existed in 1991, when Plaintiff Stephen Ayres executed the Note and the Deed of Trust, does contain an election provision. Starting in 1990, the operative CLEC provision stated as follows:

> (a) *Option to make loan.* Notwithstanding any other provisions of this title, a credit grantor may at its option elect to make a loan to any borrower either pursuant to this subtitle or as otherwise permitted by applicable law.

Md. Code. Ann., Com. Law § 12-1014 (1990). Thus, the Court finds that for Plaintiffs to prevail on their CLEC claim, they must put forth evidence that the lender on March 18, 1991 elected to have CLEC apply to the Ayres Loan.

Maryland courts have held that, generally, for a lender to elect to be governed by CLEC, the lending document should include a "statement that CLEC applies." *Biggus v. Ford Motor Credit Co.*, 613 A. 2d 986, 992-93 (Md. 1992) (finding that where the contract referenced Maryland Commercial Law Subtitle 10, there was an affirmative CLEC election), *superseded by*

*statute as recognized in Ford Motor Credit Co., LLC v. Roberson*, 25 A.3d 110 (Md. 2011). Put another way, "a lending agreement must specifically state that the CLEC applies in order for the provisions of the CLEC to govern that agreement." *Epps v. JP Morgan Chase Bank, N.A.*, 675 F.3d 315, 328 (4th Cir. 2012); *see also Lyles v. Santander Consumer USA Inc.*, 275 A.3d 390, 393 (2022).

Here, even when construing the facts in the light most favorable to Plaintiffs, the Court cannot reasonably construe the evidence to find that Defendants affirmatively elected to have CLEC govern the Ayres Loan. Neither the Note nor the Deed of Trust mention Maryland law, let alone reference the applicable Title of the Maryland Commercial Law. (2nd JA0001-06). Indeed, the Note makes no reference to the governing law. (2nd JA0001-02). The Deed of Trust simply provides that it "shall be governed by Federal law and the law of the jurisdiction in which the Property is locate." (2nd JA0005). Contrary to Plaintiffs' allegations in the Second Amended Complaint, when construing the evidence before it in the light most favorable to Plaintiffs, the Court cannot reasonably construe such language in the Deed of Trust to constitute an affirmative CLEC election. *See Biggus*, 613 A. 2d at 992-93  ("The most obvious way in which the creditor may elect CLEC's application to an extension of credit is to include in the contract documents a statement that CLEC applies"); *see also Lyles*, 275 A.3d at 393 (explaining that the "protections, parameters, requirements, and remedies only apply if a credit grantor affirmatively elects CLEC to apply to a closed end credit loan"). Accordingly, the Court cannot find that, as a matter of law, any of the Defendants affirmatively elected to have CLEC govern the Ayres Loan. Summary judgment in favor of Defendant PHH will be entered on Count IX, as it relates to the CLEC declaratory judgment provision.

### E. Declaratory Judgment Act and Injunctive Relief

Plaintiffs further allege that Defendants have violated the Declaratory Judgment Act, which entitles them to injunctive relief in the form of monetary damages. (Second Amended Complaint, ¶¶ 99-100); *see also id.*, p. 24 ("**Wherefore** Plaintiff respectfully request that the Court enter declaratory Judgment and Injunctive Relief in favor of the Ayres (sic) by ordering the return of the $80,55.64 in overpayments").

The Declaratory Judgment Act provides that "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). As the Fourth Circuit has held, the Declaratory Judgment Act is "remedial only and neither extends federal courts' jurisdiction nor creates any substantive rights." *CGM, LLC v. BellSouth Telecomms., Inc*., 664 F.3d 46, 55 (4th Cir. 2011). Put another way, a request for declaratory relief "is barred to the same extent that the claim for substantive relief on which it is based would be barred." *Id.* at 55-56 (further citations omitted).

As set forth above, the Plaintiffs cannot pursue entry of Declaratory Judgment and Injunctive Relief on their CLEC claim. In addition, because the Court granted judgment in favor of all Defendants on Counts VII-VIII, the Plaintiffs cannot pursue entry of Declaratory Judgment and Injunctive Relief related to those claims. *Id.* at 56 (holding that because the party's substantive claim failed, its Declaratory Judgment Act claim must so too fail).

## IV.    CONCLUSION

For the foregoing reasons, the Plaintiffs' Motion for Summary Judgment against all Defendants as to Counts VII-IX is **DENIED,** and is **DENIED** against Defendants Ocwen, Paul, and BONY as to Counts I-II**.** In addition, the Defendants' Motion for Summary Judgment is

**GRANTED** related to all Defendants as to Counts VII-VIII, including Declaratory Judgment Act claims related to those counts. Moreover**,** Defendants' Motion for Summary Judgement is **GRANTED** related to all Defendants as to Count IX, except for those Declaratory Judgment Act claims related to Counts I-II. Furthermore, the Defendants' Motion for Summary Judgment is **GRANTED** related to Defendants Ocwen, Paul, and BONY as to Counts I-II.

       A separate Order will follow.


Date: February 25, 2025

                                       /s/
                              The Honorable Gina L. Simms
                              United States Magistrate Judge